UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

HERIBERTO ESTRADA RODRIGUEZ,

    Plaintiff,

v.  Civ. No. 19-608 GJF

ANDREW SAUL, *Commissioner of
the Social Security Administration*,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court upon Plaintiff's "Motion to Reverse and Remand for Rehearing With Supporting Memorandum" [ECF 16] ("Motion"). The Motion is fully briefed. *See* ECFs 23 (Response), 28 (Reply). Having meticulously reviewed the entire record and the parties' briefing, and for the reasons articulated below, the Court will **AFFIRM** the Commissioner's final decision, **DENY** Plaintiff's Motion, and **DISMISS** this case **WITH PREJUDICE**.

**I.   BACKGROUND**

Plaintiff was born in 1968 and completed schooling through the sixth grade. Administrative Record ("AR") 234, 281. He has had several full-time jobs, including as a maintenance employee, maintenance supervisor, and convenience store cashier. AR 65-66, 281. Around 2014, Plaintiff injured his back while working as a maintenance employee for a mobile home park, while doing tasks such as lifting heavy concrete bags and pulling out old swing sets. AR 23, 281, 379, 422. In July 2015, he was "let go" from this job, presumably because he could no longer keep up with its physical demands. *See* AR 23, 67, 280-81. In August 2015, he applied for social security disability benefits, claiming he could no longer work due to "two herniated discs in the low[er] back" and "right arm problems." AR 227-240, 280. In September 2015, Plaintiff

began working for Maintenance Service Systems, Inc., doing part-time office cleaning work with his wife and two children. AR 62-64, 67, 356.

In July 2016, the Social Security Administration (SSA) found that Plaintiff's statements about his symptoms were only "partially consistent" with the evidence and concluded that his lower back problems were "not severe enough to keep [him] from working." AR 109, 113, 152.[1] Upon Plaintiff's request for reconsideration, the SSA again found Plaintiff's statements to be "partially consistent" and again concluded that—despite his lower back problems—Plaintiff was capable of working. AR 130-40. Plaintiff then requested a hearing, which was held in April 2018 before Administrative Law Judge ("ALJ") Stephen Gontis. AR 57, 167-68. The ALJ similarly found that Plaintiff's statements were not "entirely consistent" with the evidence and likewise concluded that Plaintiff was capable of working. AR 45-51. In May 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision, after which Plaintiff timely petitioned this Court for relief. AR 1; ECF 1.

## II. PLAINTIFF'S CLAIMS

Plaintiff contends that the ALJ breached his duty to develop an adequate record. Mot. 11-15. In addition, Plaintiff asserts that the ALJ erred by not providing adequate reasons for discounting a portion of an opinion from Plaintiff's chiropractor. Mot. 21-23.[2]

## III. APPLICABLE LAW

### A. Standard of Review

The Court's review of an ALJ's decision is both legal and factual. *See Maes v. Astrue*, 522

---

[1] The SSA also considered Plaintiff's "right arm problems" but found that these problems could not be established through "objective medical evidence"—a finding that Plaintiff later conceded. *See* AR 71, 108; 20 C.F.R. § 404.1521.

[2] Plaintiff's Motion also contains a third argument, which the Court does not address, as Plaintiff expressly "concede[d] this argument" in his subsequent briefing. Reply 4 (citing Mot. 15-21).

F.3d 1093, 1096 (10th Cir. 2008) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence." (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992))).

In determining whether the correct legal standards were applied, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). The Court may reverse and remand if the ALJ failed to "apply correct legal standards" or "show . . . [he or she] has done so." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)).

The Commissioner's findings "as to any fact, if supported by substantial evidence, *shall* be conclusive." 42 U.S.C. § 405(g) (emphasis added). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (brackets in original) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "And . . . the threshold for such evidentiary sufficiency is not high. Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla." *Id.* (internal quotation marks and citation omitted). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

Under this standard, a court should still meticulously review the entire record, but it may not "reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quoting *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th

Cir. 2004)); *Hamlin*, 365 F.3d at 1214. Indeed, a court is to "review only the *sufficiency* of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). Therefore, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). Furthermore, a court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200) (brackets omitted).

Ultimately, if the correct legal standards were applied and substantial evidence supports the ALJ's findings, the Commissioner's decision stands and Plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin*, 365 F.3d at 1214.

### B. Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable to "engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added).

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (citing 20 C.F.R. § 404.1520).[3] The claimant bears the burden of proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *Williams v. Bowen*, 844 F.2d

---

[3] For the sake of brevity, the Court cites only to Part 404 of the Code of Federal Regulations (governing claims for Disability Insurance Benefits) and not the parallel regulation in Part 416 (governing claims for Supplemental Security Income).

748, 750-51, 751 n.2 (10th Cir. 1988).  In the first four steps, the claimant must show (1) that "he is not presently engaged in substantial gainful activity," (2) that "he has a medically severe impairment or combination of impairments," and either (3) that the impairment is equivalent to a listed impairment[4] or (4) that "the impairment or combination of impairments prevents him from performing his past work."  *Williams*, 844 F.2d at 750-51; *Grogan*, 399 F.3d at 1261.

If the claimant has advanced through step four, the burden of proof then shifts to the Commissioner to show that the claimant nonetheless retains sufficient functional capacity "to perform other work in the national economy in view of his age, education, and work experience."  *Yuckert*, 482 U.S. at 142, 146, n.5.

### IV. PLAINTIFF'S REQUEST FOR A PSYCHOLOGICAL EXAMINATION

Plaintiff did not allege any mental impairments when he applied for disability benefits in August 2015—or when he later completed the SSA's "function report" questionnaires in September 2015 and June 2016.  AR 280, 306-13, 320-27.  Nevertheless, fifteen days before the April 2018 hearing with the ALJ, Plaintiff's counsel sent the ALJ a memorandum requesting that he order a "psychological consultative examination" for Plaintiff for the purpose of developing "a fuller-context picture of [Plaintiff's] mental impairments."  AR 366.  In support of this request, counsel submitted a written statement from Plaintiff's daughter[5] and referenced an August 2016 progress note from one of Plaintiff's follow-up appointments related to diabetes and back pain.  AR 337 (citing AR 555-56); AR 559-60.  This progress note, authored by Agustina Garzon-Lopez, MD, at La Familia Medical Center, included Plaintiff's responses to a yearly "Depression

---

[4] If the claimant can show that he has a listed impairment, he will be found to be disabled and the analysis stops. 20 C.F.R. § 404.1520(a)(4)(i-iv).  Otherwise, if no listed impairment can be shown, the analysis moves on to step four. *Id*.

[5] *See* AR 362-63 (Plaintiff's daughter asserting, *inter alia*, that Plaintiff was depressed because he "can't work" and "has no control over his life").

Screening." AR 555.[6]  The note also listed six "assessed" conditions, followed by six corresponding treatment comments. AR 556-57. The treatment comment for one of these assessed conditions, "reactive depression," stated that Plaintiff "screen[ed] positive," that his "mood was flat . . . compared to other visits," and that he was "interested in counseling." AR 557.

At the hearing before the ALJ, Plaintiff's counsel renewed the request for a consultative examination but acknowledged that this progress note was the only objective medical evidence of depression. AR 61, 71. Indeed, although Plaintiff—in completing a general questionnaire while being seen for back pain—"admitted" to depression,[7] he never received any specialized mental health treatment and was never prescribed any anti-depressant medication. *See* AR 283, 332-33, 342-43, 357-58. Instead, as the ALJ observed, "[Plaintiff's] mental status examinations show[ed] largely benign findings of normal mood and affect, proper orientation, and intact memory." AR 44 (citing AR 436, 573, 611-29); *see also* AR 473-74, 556, 605, 608 (Dr. Garzon-Lopez observing on four occasions between April 2016 and December 2017 that Plaintiff was alert, oriented, cooperative, had intact cognitive function, and good judgment and insight), 494 (similar findings by Joshu Raiten, MD, in October 2015).

In addressing this request at the hearing, the ALJ observed that "the only reasons that [Plaintiff] talked about in the hearing for leaving [his] previous full-time work and having trouble working full time now were all physical." AR 77; *see also* AR 63-72, 76-78. Nevertheless, despite this lack of "evidence of [a] severe mental impairment," the ALJ agreed to consider counsel's

---

[6] Specifically, this screening documented Plaintiff as having responded that the following circumstances occurred "nearly every day:" (1) "[f]eeling nervous, anxious or on edge;" (2) "[n]ot being able to stop or control worrying;" (3) "[f]eeling down, depressed, or hopeless;" and (4) "[l]ittle interest or pleasure in doing things." AR 555. The screening also documented that he responded "yes" when asked whether he "felt [he] ought to . . . cut down on [his] drinking or drug use." *Id.* Finally, the screening concluded with the statement that "[s]creen[ing] [was] positive." *Id.*

[7] *See* AR 485, 489, 534, 613, 618, 620 (nurse practitioner's progress notes between March 2016 and January 2018, documenting Plaintiff's responses, during six visits related to back pain, to an overall "Review of [Health] Systems" questionnaire).

request for a psychological consultative examination. AR 78. Ultimately, as explained *infra*, the ALJ found that such an examination was not warranted on the record before him.

## V. ALJ'S FINDINGS

In his September 2018 written decision, the ALJ affirmed that he carefully considered "all the evidence" and "the entire record." AR 42, 43, 45.

### A. Steps One through Three

At step one, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since the alleged onset date of his disability. AR 43-44.[8]

At step two, the ALJ found that Plaintiff had the severe impairment of "degenerative disc disease of the lumbar spine." AR 44. The ALJ found Plaintiff's remaining impairments—including diabetes, gastroesophageal reflux disease, and depression—were non-severe. *Id.* In concluding that the "medically determinable" impairment of depression was non-severe, the ALJ found that it "[did] not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities." *Id.* In making such a finding, the ALJ observed that although "[Plaintiff] complained of being depressed on some visits[,] he had not sought or received specialized mental health treatment;" that "[o]n most visits, he had a normal psychiatric examination;" and that his "mental status examinations show[ed] largely benign findings." *Id.* (citations omitted). Furthermore, in using the "four broad functional areas" to rate the degree of Plaintiff's mental limitations, the ALJ found that Plaintiff had no limitations in three areas[9] and a mild limitation in one.[10] The ALJ observed that these

---

[8] Although Plaintiff testified that he cleaned offices for three-and-a-half hours a day, five days a week, the ALJ found that his documented monthly earnings from this job "[did] not reach the level of presumptive substantial gainful activity as defined by [the] Regulations." *Id.*

[9] *I.e.*, in "understanding, remembering, and applying information;" "concentrating, persisting, or maintaining pace;" and "adapting or managing oneself." *Id.*; *see* 20 C.F.R. § 404.1520a(c) (listing the "four broad functional areas" used to evaluate mental impairments).

[10] *I.d.*, in "interacting with others." *Id.*

7

findings showed a "lack of allegation or evidence" of a severe mental impairment. *Id.* Consequently, the ALJ denied counsel's request for a mental consultative examination. *Id.*

At step three, the ALJ found that no impairment or combination thereof satisfied the criteria of a listed impairment. AR 45.

### B. Residual Functional Capacity

Before performing the step four analysis, in which the ALJ considers whether a claimant can perform past work, the ALJ must first determine the claimant's RFC.[11] Here, the ALJ found that Plaintiff had the RFC to perform a reduced range of "light work." AR 45 (citation omitted).[12]

In making such an RFC finding, the ALJ observed that Plaintiff's allegations of disabling limitations—such as his testimony that he could no longer "lift a gallon of milk" or his assertion that he could only "walk 100 feet before needing to stop and rest for 10 minutes"—were "not entirely consistent with the medical evidence and other evidence in the record." AR 46. For example, the ALJ noted that, although Plaintiff sought pain management treatment, chiropractor services, and (for a month in late 2014) physical therapy treatment, he "reported significant improvement in his back and left leg pain with steroid injections and . . . medications." AR 47 (citations omitted). Furthermore, during a January 2018 follow-up visit, Plaintiff "reported significant pain reduction," "denied back pain, joint pain or swollen joints," and had a "physical

---

[11] *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity."); *but cf. Winfrey*, 92 F.3d at 1023 (describing the RFC determination as technically the first part of step four).

[12] Specifically, the ALJ found that Plaintiff could "perform light work as defined in 20 CFR 404.1567(b)" with the additional restrictions of "lifting 20 pounds occasionally and 10 pounds frequently; carrying 20 pounds occasionally and 10 pounds frequently; sitting for 6 hours, standing for 4 hours, walking for 4 hours in an 8 hour workday; pushing and pulling as much as he could lift and carry." *Id.* In addition, the ALJ found that Plaintiff could "climb ramps and stairs occasionally, climb ladders, ropes, or scaffolds occasionally, balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally and crawl occasionally" and that "[h]is time off task [could] be accommodated by normal breaks." *Id.*

examination [that] was normal with benign findings." *Id.* (citation omitted). In further explaining his RFC finding, the ALJ stated the following:

> [T]he objective medical evidence show[ed] relatively mild abnormalities . . . [and] evidence show[ed] that [Plaintiff] has significant improvement with conservative treatment . . . . [Plaintiff] has not necessarily received the type of treatment one would expect if he experienced severe, persistent, and unremitting pain. [His] back pain and radiculopathy appear to be stable with steroid injections and low dose opiate therapy. He has not undergone surgery. . . . [or] undergone physical therapy since 2014. On December 14, 2017, [Plaintiff's] chiropractor [David Bixel, DC] noted that [he] was in good health and expected to make progress and recovery with few residuals. . . .

AR 47-48 (citations omitted). The ALJ also observed that "[Plaintiff's] ability to clean offices [was] consistent" with the ALJ's RFC findings. AR 48.

The ALJ also gave "great weight" to the opinions of two state agency medical consultants, Nancy Armstrong, MD, and Karl K. Boatman, MD—both of whom opined that Plaintiff could "perform light work with some limitations," which included "stand[ing] and/ or walk[ing] for a total of 4 hours" or "sit[ting] for a total of 6 hours" in a normal workday. AR 48-49 (citations omitted). The ALJ also gave "significant weight" to the (one-page, non-narrative) March 2018 opinion of Plaintiff's chiropractor, Dr. Bixel, who rated Plaintiff as being able to, *inter alia*, "stand and/or walk for a total of at least 4 hours" in a normal workday. AR 48. The ALJ generally found Dr. Bixel's opinion "consistent with his treatment records and the overall medical evidence showing significant improvement with medications and injections" and "consistent with [Plaintiff's] work activity [of cleaning offices] after his alleged onset date." *Id.* The ALJ, however, found that Dr. Bixel's rating of Plaintiff as needing to "periodically alternate from sitting to standing position" was not supported by "the objective medical evidence and the overall evidence." *Id.*

### C. Steps Four and Five

At step four, given the RFC described above, the ALJ found that Plaintiff was unable to perform his past relevant work. AR 49. At step five, however, the ALJ found that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." AR 49-50.

## VI. ANALYSIS

### A. The ALJ Was Not Required to Order a Consultative Examination

Plaintiff claims that the ALJ breached his duty to develop an adequate record, specifically by not "request[ing] a consultative psychological examination." Mot. 11-15; Reply 1-4. This Court disagrees.

#### 1. Applicable Legal Standard

##### a. Whether a Mental Impairment Is "Severe"

At step two, an impairment will be deemed "medically determinable" if it is "established by objective medical evidence from an acceptable medical source," (i.e., through "medically acceptable clinical and laboratory diagnostic techniques"). 20 C.F.R. § 404.1521. If a mental impairment is "medically determinable," the ALJ then determines whether it is "severe," specifically by "rat[ing] the degree of [the claimant's] functional limitation based on . . . . four broad functional areas." §§ 404.1520a(c), 404.1521. If "the degrees of [the claimant's] limitation [are] 'none' or 'mild,' [the ALJ] will generally conclude that [the] impairment(s) is not severe." § 404.1520a(d). Furthermore, the ALJ will find the impairment to be non-severe if it does not "*significantly* limit[] [the claimant's] . . . mental ability to do basic work activities." § 404.1520(c) (emphasis added); *see also Cowan v. Astrue*, 552 F.3d 1182, 1186 (10th Cir. 2008) (observing that, for a claimant to meet his step-two burden, "a showing of the mere presence of a condition is not

sufficient"); *Williamson v. Barnhart*, 350 F.3d 1097, 1100 (10th Cir. 2003) (noting that a finding of non-severe is "only to be made where medical evidence establishes only a slight abnormality" that would "have no more than a minimal effect on an individual's ability to work" (internal quotation marks omitted)).

### b. Developing the Record

"In a social security disability case, the claimant bears the burden to prove [his] disability," and "the ALJ has a duty to ensure that an adequate record is developed." *Wall v. Astrue*, 561 F.3d 1048, 1062-63 (10th Cir. 2009) (internal quotation marks omitted). This duty is "one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision." *Cowan*, 552 F.3d at 1187. "But an ALJ's duty to develop the record is *not* unqualified." *Wall*, 561 F.3d at 1063 (emphasis in original). To "trigger the ALJ's duty," *Davison v. Colvin*, 596 Fed. Appx. 675, 679 (10th Cir. 2014) (unpublished), a claimant "need not only 'raise' the issue [he] seeks to develop, but that issue must also be 'substantial' 'on its face.'" *Wall*, 561 F.3d at 1063 (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997)). "Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." *Id.* (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007)).[13] "When the claimant has satisfied [his] burden in that regard, it then, and only then, becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment." *Hawkins*, 113 F.3d at 1167. Consequently, "there

---

[13] "In deciding how much evidence is sufficient, 'the starting place must be the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation.'" *Davison*, 596 Fed. Appx. at 679 (quoting *Hawkins*, 113 F.3d at 1167).

[is] no need to further develop the record [when] sufficient information existed for the ALJ to make [his] disability determination." *Cowan*, 552 F.3d at 1187.[14]

    *2. Analysis*

The Court begins its analysis by assuming for the sake of discussion that Plaintiff's depression was indeed "medically determinable."[15] In addition, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff's "medically determinable" depression was non-severe. *See*, *e.g.*, AR 44, 77 (ALJ finding that (1) the "only reasons" Plaintiff testified to for his difficulties working "were all physical," (2) Plaintiff's mental examinations were generally "normal" and "show[ed] largely benign findings," and (3) Plaintiff had only one *mild* mental limitation out of the "four broad functional areas"). Indeed, Plaintiff explicitly declines to argue that, based on such evidence, the ALJ erred at step two by finding his depression to be non-severe. Mot 14-15; Reply 2-4. Instead, Plaintiff argues that, by not ordering a consultative psychological examination, the ALJ breached his duty to develop an adequate record. Mot. 14-15; Reply 1, 4.

The Court, however, holds that the ALJ was not required to order such an examination. To begin, the issue of whether Plaintiff's depression was "severe" is not an issue that is "*substantial on its face*"—i.e., the evidence in the record does not suggest "a reasonable possibility that a severe impairment exist[ed]." *Wall*, 561 F.3d at 1063 (emphasis added). Although a cursory

---

[14] *See also id.* at 1185-87 (finding both (1) no error when the ALJ concluded that the claimant did not have a severe mental impairment—even though, after a mental status examination, the claimant's treating physician prescribed him an anti-depressant "for anxiety and depression"—and (2) "no need to further develop the record because sufficient information existed for the ALJ to make her disability determination" when, *inter alia*, "there was no evidence, medical or otherwise, suggesting that [the claimant's] mental impairment had any greater [i.e., more than a 'mild'] effect on [his] ability to work").

[15] *I.e.*, that the family doctor's "assessment" of depression—with no explanation other than "[annual behavioral health] screening positive," "[Plaintiff's] mood was flat . . . compared to other visits," and "[Plaintiff] interested in counseling"—qualifies as establishing depression through "medically acceptable clinical and laboratory diagnostic techniques." AR 557; 20 C.F.R. § 404.1521 (defining what "objective medical evidence" consists of).

"assessment" by Plaintiff's family doctor of depression—accompanied by nothing more than the doctor's observations that Plaintiff "screen[ed] positive" on an annual screening, had a "flat" mood, and was "interested in counseling"—might qualify as "some objective evidence" of depression, such evidence is only "the starting place." *Hawkins*, 113 F.3d at 1167; *see also Cowan*, 552 F.3d at 1186 (observing that "a showing of the *mere presence* of a condition is not sufficient" (emphasis added)).  Thus, while the record may contain some evidence of the *existence* of depression (e.g., this cursory "assessment," Plaintiff general questionnaire responses, and his daughter's written statement), the evidence also shows that there is no "reasonably possibility" that Plaintiff's depression was "severe" (i.e., that it "*significantly* limit[ed] [his] . . . mental ability to do basic work activities"). 20 C.F.R. § 404.1520(c) (emphasis added); *see*, *e.g.*, AR 44 (ALJ observing that Plaintiff *never* "sought or received specialized mental health treatment" and that the mental status examinations "show[ed] largely benign findings"), 77 (ALJ observing that the "only reasons" Plaintiff testified to for his difficulties working "were all physical"). Consequently, "there was no need to further develop the record." *Cowan*, 552 F.3d at 1187.

### B. The ALJ Did Not Err in Discounting the Opinion of Plaintiff's Chiropractor

Plaintiff next claims that the ALJ erred by not providing "adequate reasons" for discounting the portion of Dr. Bixel's opinion that stated Plaintiff must "periodically alternate sitting and standing to relieve pain or discomfort." Mot. 21-23 (quoting *Givens v. Astrue*, 251 Fed. Appx. 561, 568 (10th Cir. 2007) (unpublished)); AR 641. Specifically, Plaintiff argues that the ALJ's finding that "the objective medical evidence and the overall evidence [did] not support [this portion of the] opinion" is simply inadequate and unsupported by substantial evidence. Mot. 21-23; Reply 4-6. This Court disagrees.

An ALJ must consider opinions from all medical sources, including those who do not qualify as "acceptable medical sources," such as chiropractors. 20 C.F.R. §§ 404.1502(a)-(b), (d), 404.1527(f).[16] In addition, the ALJ "generally should explain the weight given to opinions from these sources or otherwise ensure that . . . [a] subsequent reviewer [can] follow [his] reasoning." *Id.*; *see also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012) (stating that "[i]n the case of a nonacceptable medical source . . . the ALJ's decision is sufficient if it permits [the court] to follow [his] reasoning" (internal quotation marks omitted)). Consequently, if "the ALJ provides 'good reasons in his decision for the weight he gave to the . . . opinion[], [n]othing more [is] required.'" *Mounts v. Astrue*, 479 Fed. Appx. 860, 865-66 (10th Cir. 2012) (unpublished) (alternation in original) (quoting *Oldham*, 509 F.3d at 1258).

The Court finds that, in giving no more than "significant weight" to Dr. Bixel's March 2018 opinion, the ALJ provided "good reasons" that the Court can follow. First, the ALJ explained that he gave this opinion "significant weight" because it was consistent with both the "medical evidence showing significant improvement with medications and injections" and Plaintiff's ability to continue working as an office cleaner. AR 48. Second, he declined to give Dr. Bixel's opinion greater weight, particularly because "the objective medical evidence and the overall evidence [did] not support [the portion of] his opinion that [Plaintiff] must periodically alternate from sitting to standing." *Id.*[17] Consequently, in light of these "good reasons," the Court holds that "[n]othing more was required." *Oldham*, 509 F.3d at 1258.

---

[16] *See also Endriss v. Astrue*, 506 Fed. Appx. 772, 777 (10th Cir. 2012) (unpublished) (observing that "[o]nly 'acceptable medical sources' can be considered a treating source, establish the existence of a medically determinable impairment, and give a medical opinion" and that "[e]vidence from other sources like chiropractors . . . may be used 'to show the severity of the individual's impairment(s) and how it affects the individual's ability to function'" (quoting SSR 06-03p)).

[17] *See*, *e.g.*, Section V(B) (quoting AR 47-48) (ALJ noting that (1) in January 2018, Plaintiff "reported significant pain reduction," "denied back pain, joint pain or swollen joints," and had a "physical examination [that] was normal with benign findings," (2) Plaintiff "ha[d] not necessarily received the type of treatment one would expect if he experienced

## VII. CONCLUSION

For the foregoing reasons, the Court holds that the ALJ applied the correct legal standards and that his findings and decision were supported by substantial evidence.

**IT IS THEREFORE ORDERED** that the Commissioner's final decision is **AFFIRMED**, that Plaintiff's Motion is **DENIED**, and that this case is **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*

---

severe, persistent, and unremitting pain," "ha[d] not undergone surgery. . . . [or] undergone physical therapy since 2014," had "relatively mild abnormalities," and "ha[d] significant improvement with conservative treatment," and (3) Dr. Bixel conclusion in December 2017 that Plaintiff was "in good health and expected to make progress and recovery with few residuals").